COOK et al. v. KLONOS et al.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,510.

1. EXCEPTIONS, BILL OF (§ 36*)—SETTLEMENT—POWER OF COURT.
The fact that an appeal has been allowed, a supersedeas bond approved and filed, and a citation issued does not deprive the trial judge of power to thereafter settle and sign a bill of exceptions during the same term at which the decree appealed from was entered, where it was duly presented to him for settlement before the appeal was allowed.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 45, Dec. Dig. § 36.*]

2. EQUITY (§ 363*)—ALASKA CODE—DISMISSAL FOR LACK OF PROOF.
A motion by the defendant at the close of plaintiff's case to dismiss a suit of an equitable nature on the ground that plaintiff has failed to make a prima facie case, under Code Civ. Proc. Alaska, § 378 (Act June 5, 1900, c. 786, 31 Stat. 395), which authorizes the dismissal of such a suit whenever upon the trial it is determined that the plaintiff is not entitled to the relief claimed, or any part thereof, like a motion in an action at law for a nonsuit or direction of a verdict on the same ground, admits every fact which the evidence proves, or tends to prove, as well as the facts which may naturally and rationally be inferred from the facts proved.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 766; Dec. Dig. § 363.*]

3. MINES AND MINERALS (§ 38*)—SUIT TO QUIET TITLE TO MINING CLAIM—EVIDENCE.
In a suit to quiet title to an association placer mining claim, evidence that plaintiffs located the claim, marked its boundaries by stakes and monuments, put up and recorded a proper location notice, and went into peaceable possession, following it by sinking two shafts to bed rock, in which they first discovered gold at a depth of 72 feet, and that there were no other excavations on the claim, except a hole a foot or so in depth, is sufficient prima facie to show that at the time of the location the ground was unappropriated public land of the United States, its mineral character being admitted, although it further appeared that there were other stakes and location notices within the limits of the claim, not shown, however, to belong to defendants; a discovery being essential to any valid prior location.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 102½; Dec. Dig. § 38.*]

4. MINES AND MINERALS (§ 14*)—FRAUDULENT ENTRY—ASSOCIATION CLAIM.
Under Rev. St. §§ 2330, 2331 (U. S. Comp. St. 1901, p. 1432), which authorize two or more persons to make a joint entry of placer claims not exceeding 160 acres for any one association, provided that no such location shall include more than 20 acres for each individual claimant, the location of a claim of 160 acres in the name of eight persons is fraudulent and void as against the United States, where it was made pursuant to a previous agreement by which another person, not even one of the locators, was to receive an interest exceeding one-third of the entire claim, and will not be protected by a court of equity.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 14.*]

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
164 F.—34

John L. McGinn, Martin L. Sullivan, and Heilig & Tozier (Campbell, Metson, Drew, Oatman & Mackenzie and E. H. Ryan, of counsel), for appellants.

Fernand De Journel and H. J. Miller (T. C. West, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.   This action was commenced by appellants against the appellees in the District Court for the Territory of Alaska, Third Division, April 20, 1905.   A second amended and supplemental complaint was filed April 28, 1905, setting up three causes of action:  (1) An action on the part of plaintiffs (appellants) against defendants (appellees), alleging that since the 24th day of March, 1905, the plaintiffs have been the owners in fee, as to all persons save the United States, of a certain placer mining claim in the Fairbanks recording district, situated on the right limit of Dome creek, and known as the "Dome Group," more particularly marked upon the ground and described by courses, distances, and stakes.   It is alleged that the defendants claim an estate or interest in said property adverse to the plaintiffs, but that said claim is without any right whatever.   (2) It is alleged in the second cause of action that prior to the 24th day of March, 1905, the property described was a part of the vacant and unappropriated public domain of the United States, and was free and open to exploration and purchase by the citizens thereof for the valuable mineral deposits therein contained; that on the 24th day of March, 1905, the plaintiffs, being citizens of the United States, entered upon said ground and segregated the same from the public domain by distinctly marking the boundaries thereof upon the ground, so that the same could be readily traced; that on the 16th day of April, 1905, plaintiffs made a discovery of gold within the exterior boundaries of said property, and thereafter, on the 17th day of April, 1905, they caused to be recorded in the records of the Fairbanks recording district of Alaska a notice of location of said claim, giving the names of the plaintiffs as locators, the date of said location, and such a description of said claim with reference to natural objects and permanent monuments that the same could be readily identified; that the defendants assert that they are, and they pretend to be, the owners of certain parts, portions, and parcels of the ground described, under and by virtue of pretended placer mining locations made by them or those under whom they claim prior to the title of plaintiffs; that said assertions of title and pretensions of ownership on the part of defendants and each of them are wrongful and without right; that neither the defendants nor those under whom they claim ever at any time have made a discovery of gold within the boundaries of any portion or parcel of ground claimed by them or either of them; that neither the defendants nor those under whom they claim ever, prior to the location of the plaintiffs or at any time, marked the location of their boundaries upon the ground, so that the same could be readily traced; that the claims of defendants cause a cloud upon the possession and title of plaintiffs, and prevent them from enjoying fully and peacefully the fruits of

their ownership of the property. (3) In the third cause of action plaintiffs' ownership of the placer mining claim described in the first and second causes of action is alleged, and it is charged that defendants have entered upon and trespassed upon certain portions of the property, and have proceeded to mine and remove and appropriate, and convert to their own use, the gold and mineral contained in the land, and to cut and remove and use the trees and timber growing thereon; that the defendants and each and all of them are insolvent, and not able to respond in damages to the plaintiffs. The prayer of the complaint is that the defendants be required to set forth the nature of their claims in and to the property described, and that all adverse claims of the defendants be determined by a decree of the court, and that by such decree it should be ordered and adjudged that the defendants have no estate or interest whatsoever in and to said land and premises; that the cloud cast upon plaintiffs' title be removed; that an account be taken of all gold extracted by the defendants, and that a judgment be entered against the defendants for the amount so extracted; that pending the action a temporary injunction issue against the defendants, restraining them from extracting gold from the premises, and upon a final hearing that the injunction be made perpetual; that it be adjudged that the plaintiffs are the owners in fee of said premises as to all persons save and except the United States, and are entitled to the sole and exclusive possession thereof; that defendants be enjoined from making any claim thereto; for plaintiffs' costs, and for general relief. The defendants answered the complaint, denying the allegations thereof, except that they all admitted that they asserted ownership of certain portions and parcels of the ground in controversy, and, alleging title and possession in themselves, set forth certain facts connected with such claims of ownership. The plaintiffs replied, denying all the allegations of the several answers, and upon the issues thus presented the case was tried in April, 1907.

Three witnesses were introduced on behalf of plaintiffs—R. A. Jackson, a civil engineer; J. C. Ridenour, one of the plaintiffs; and E. T. Barnette, who claimed to represent six absent locators as attorney in fact. The testimony of R. A. Jackson was to the effect that he had visited the upper end of the claim in June, 1905, saw a number of stakes of the Dome Group at that time, and all the stakes but one on November 5, 6, 7, and 8, 1906, when in company with Cook, one of the plaintiffs, he spent four days making a survey of the group, and from data obtained at that time and previously, compiled a map of the Dome Association Group, showing all conflicting claims of which he had knowledge, which plat was introduced in evidence by plaintiffs. He testified that he found all but one of the stakes in place, and a cut-out line in the underbrush definite enough to indicate the course from each stake to the next succeeding one.

J. C. Ridenour testified that he and his coplaintiff, Henry Cook, entered upon the property in question on March 22, 1905, and took possession of a cabin which they found there; that this cabin was occupied by witness from March 22, 1905, to June 10, 1905; that Henry Cook and Peter Morrison also lived with witness in the cabin; that on the

23d of March Cook left, and the witness proceeded to stake out the claim, placing the initial stake near the cabin, and establishing 25 other boundary stakes of suitable size; that these stakes were established at intervals of about 600 feet, so as to include within the boundaries of the claim about 160 acres. On the initial stake the witness posted a notice of location, a copy of which was afterward, on April 17, 1905, recorded with the commissioner and ex officio recorder of the Fairbanks recording district. A certified copy of this recorded notice was introduced in evidence. The location notice included the signatures of himself and Cook and six others, whom he did not know; but he put the notice up under the order of Cook, after filling in the directions from stake to stake in blanks left for that purpose; that the list of names came out to him with some supplies sent out to him by Capt. Barnette; that he had no authority to locate a placer mining claim for A. D. Armstrong, only that Henry Cook told him to locate it, and the same as to the other six locators who were absent; that the staking was finished on the afternoon of March 24th by placing the completed notice of location in a candle box fastened to the initial stake, claiming the property in the name of himself and Cook and the six other parties; that he had never seen anything upon the property that indicated in any way that there ever had been a shaft sunk on the property; that he had seen some stakes of other mining claims, also notices posted at various places within the limits of the ground located as the Dome Association Group at the time he located it; that later he had found a hole where some one had started prospecting. This was a little place about a foot deep and about 3 feet by 6 feet. After staking out the claim Ridenour testified that he immediately began on March 24, 1905, to sink a shaft at a distance of about 150 feet from the initial stake, he and a man named Morrison working six or seven days, when Cook arrived and took Morrison's place, and the two worked until about the 18th or 20th of May, when they reached bed rock, after going through 62 feet of muck and 65 feet of gravel, finding four or five colors of gold at a depth of about 10 or 15 feet of gravel on the 15th of April, 1905, and later found as high as 25 colors about the 1st of May; that they found the bed rock dipping toward the hill and about the 7th or 8th of June left that shaft and moved 2,700 feet away, further down stream and further away from the creek; commenced to dig about the 10th of June, and first found gold the latter part of July—something like about 4 feet of dirt that would go from 2 to 20 cents per pan. They went through 50 feet of muck and 78 feet of gravel. The two worked practically continuously on the property from March, 1905, until April, 1906, excepting for a week or two in town to get supplies, and laying off during the month of January owing to the extreme cold. With respect to the colors of gold found in shaft No. 1 on April 15, 1905, the witness testified that from the character of the material in which the gold was found, and the gold found, he believed that an ordinarily prudent man was justified in going ahead in spending further money and labor on the property with reasonable chances of developing a paying mine, and upon the strength of what he found in that shaft he did do other work upon the property.

The testimony of E. T. Barnette was offered to establish the bona fide character of the absent locators. On direct examination he identified various documents which had previously been introduced for identification, including several powers of attorney giving him full authority to locate claims in the names of the absent locators and full control over such claims when located, and a deed which he had signed on behalf of these six locators conveying to Cook and Ridenour a one-twelfth interest in the claim. On cross-examination the witness testified that each of these six absent locators, with one exception, was related to witness, either directly or indirectly; that there had been an understanding between himself and Cook and Ridenour in March, before the location was made, that Cook and Ridenour were to stake the claim, put a hole to bed rock, and witness was to furnish the tools and boiler; that Cook and Ridenour were each to have a one-eighth interest in the group claim; that there was no understanding that witness was to have any interest in the group by them nor by anybody; that McGinn and Sullivan were to get one-third interest in the group for looking after the litigation and protecting the property; that the witness was figuring on a half interest from the people he represented (the absent locators), and later said that when he sent for the power of attorney he stated in his letter to his brother-in-law that he would stake for them and would expect a half interest, but had never had any agreement with them; that in response to that letter he received the power of attorney. He took it for granted, according to the letter he wrote his brother-in-law, that he would have a half interest from them.

At the close of plaintiffs' testimony a motion was made to strike from the records all the testimony and evidence in the case relating to the performance of any acts of location of the claim of plaintiffs subsequent to the 20th day of April, the date of the commencement of the suit. This motion was granted as to defendant Klonos, and denied as to the other defendants. Motions were also made for a nonsuit and for a judgment dismissing the plaintiffs' bill, substantially on the grounds: (1) That the plaintiffs' location of eight claims, of 20 acres each, constituting the alleged Dome Group of claims, of the aggregate area of 160 acres, was not made by bona fide locators, but in the name of dummy locators, in fraud of the United States, in violation of the public land laws; (2) that the plaintiffs had not shown that prior to and at the time of the location of these eight claims the ground the possession of which is the subject of controversy was vacant and unappropriated public lands of the United States; (3) that the plaintiffs had not shown a valid possession or location of the claims, or that the boundary of the same had been marked or a discovery made thereon as required by law.

The motions were granted, on the ground that plaintiffs had not proved a prima facie case; the court stating that it was on the ground that the evidence showed that there was former occupation of the premises, and plaintiffs had not shown that the ground was unappropriated. The court, in granting the motion, said:

"Had there been no evidence of staking or location notices and other acts of appropriation upon the ground, it might have been possible that you had gone as far as you need, by proving your staking, discovery, and filing of notice;

but I think there is so much evidence of former appropriation in—and your pleadings admit it—that you now must show, not under your second cause of action, but under your first, if you rely upon that, that it was unappropriated public domain at the time you went upon it.

"Mr. McGinn: Your honor means the whole of the property, each and every part of it?

"The Court: Yes.

"Mr. McGinn: And your honor also means, by that, that we would have to go to the extent, even if there was a staking of the property and notices, of showing as a negative proposition that there never was a discovery of gold upon the property.

"The Court: I think so.

"Mr. McGinn (continuing): Upon any location claimed by them. I mean, a discovery of gold upon each location made by them.

"The Court: What was that last?

"Mr. McGinn: I want to know whether it will be incumbent upon us to prove affirmatively the negative proposition that there was never a discovery of gold made by any of the defendants in this action upon any of the property claimed by them.

"The Court: If you show failure in any one of the essentials of a valid location, that is sufficient."

Before proceeding to examine the questions involved in the appeal, it is necessary to consider the questions involved in the motion made by the appellees to strike out the bill of exceptions and to dismiss the appeal, on the ground that the order made by the judge, dated July 12, 1907, settling and allowing the bill of exceptions, was made at a date subsequent to the order allowing the appeal, and the taking of the appeal. The record shows that the judgment in the court below dismissing the bill was entered June 3, 1907, and the bill of exceptions was presented to the judge June 28, 1907, but was not signed by the judge until July 12, 1907. The assignment of errors was served June 26, 1907, and filed June 29, 1907. The petition for appeal was presented to the judge June 26, 1907, and filed June 29, 1907. The bond on appeal (supersedeas) was approved June 29, 1907. Citation on appeal was dated June 29, 1907. It is contended on behalf of the appellees that on July 12, 1907, when the judge signed the bill of exceptions, he had no jurisdiction to make the order settling the same, on the ground that the cause had at that time been removed to this court by the allowance of the appeal, and the filing of the supersedeas bond on appeal, and the issuance of the citation thereon.

The motion to strike out the bill of exceptions and dismiss the appeal must be denied. The bill of exceptions was drawn up and presented to the judge for settlement prior to the allowance of the appeal, and was settled and signed by him during the term in which the judgment was rendered. In Shreve v. Cheesman, 69 Fed. 785, 16 C. C. A. 413, the Circuit Court of Appeals for the Eighth Circuit held that the fact that a bill of exceptions showing the proceedings on a motion for a new trial after judgment was certified after the issuance of a writ of error from the Supreme Court to review the judgment did not deprive the court below of its jurisdiction or relieve it of the duty to make a true record of the proceedings in that court after the judgment. In Hunnicutt v. Peyton, 102 U. S. 354, 26 L. Ed. 113, it was held that exceptions reserved at the trial of the case may be reduced to form and presented to the judge for his signature, notwithstanding that a writ

of error is sued out before his signature is obtained. In Davis v. Patrick, 122 U. S. 138, 7 Sup. Ct. 1102, 30 L. Ed. 1090, the Supreme Court refused to strike out a bill of exceptions signed after the beginning of the term of the Supreme Court at which the writ of error was returnable and during the term of the Circuit Court succeeding that in which the case was tried; the bill having been seasonably submitted to the judge for signature and the delay having been caused by him.

We now come to the consideration of the questions involved in the appeal. We are of the opinion that the court was in error in dismissing the complaint on the ground that the evidence of former occupation and appropriation of the premises was of such a character that plaintiffs were required to show affirmatively that at the time of their location of the claim the land was vacant and unappropriated public land of the United States. The motion of the defendant in the court below to dismiss the action is made under section 378 of chapter 39 of the Code of Civil Procedure of Alaska (Carter's Ann. Code Alaska, p. 227; Act June 5, 1900, c. 786, 31 Stat. 395). The chapter is entitled "Of the Trial of Issues in Actions of an Equitable Nature," and section 378 provides as follows:

"Whenever upon the trial it is determined that the plaintiff is not entitled to the relief claimed, or any part thereof, a judgment shall be given dismissing the action, and such judgment shall have the effect to bar another action for the same cause or any part thereof, unless such determination be on account of a failure of proof on the part of the plaintiff, in which case the court may, on motion of such plaintiff. give such judgment without prejudice to another action by the plaintiff for the same cause or any part thereof."

In an action at law, if the plaintiff at the conclusion of his testimony has failed to make out a prima facie case, the defendant may move the court for a nonsuit or for an instruction to the jury to find a verdict for the defendant. In such case the defendant, for the purpose of the motion, admits every fact which the evidence proves or tends to prove, as well as the acts which may naturally and rationally be inferred from the facts proven. Dodge v. State Bank, 2 A. K. Marsh. (Ky.) 612; Pleasants v. Fant, 22 Wall. 116, 122, 22 L. Ed. 780; Dow v. Gould & Curry S. M. Co., 31 Cal. 629, 650. There is no reason why this rule should not be applicable to a like motion to dismiss in an action of an equitable nature. Heidenrich v. Heidenrich, 18 Ill. App. 142.

The evidence shows that on March 22, 1905, Cook and Ridenour, for themselves and representing six absent locators, entered upon the premises peaceably and without force or fraud, or in any surreptitious or clandestine manner, and that they have since remained in peaceable possession of the ground; that on March 23 and 24, 1905, they located the ground as an association placer claim in accordance with the provisions contained in section 2330 of the Revised Statutes (U. S. Comp. St. 1901, p. 1432); that this location was recorded April 17, 1905, with the recorder of the district in which the claim was located, as required by section 15 of the act of June 5, 1900 (31 Stat. 321, 327, c. 786); that the claim as recorded contained the names of the locators, the date of the location, and such a description of the claim located by

reference to natural objects and permanent monuments as would identify the claim as required by section 2324 of the Revised Statutes (U. S. Comp. St. 1901, p. 1426) ; that the plaintiff Ridenour and an employé sunk a shaft on the claim to bed rock, a distance of 127 feet; that on April 15, 1907, at a depth of about 72 feet in the shaft, they discovered gold in the gravel.    There is no evidence that the defendants had made any discovery upon the premises prior to that time. There was evidence that there was a cabin on the claim, of which Cook and Ridenour took possession; but there is no evidence that the cabin belonged to the defendants, or .that it was a cabin that had been occupied by miners.    Ridenour testified that he had seen some stakes of other mining claims, also notices posted at various places within the limits of the ground located by plaintiffs; but there is no evidence that these stakes were placed upon the ground by the defendants or that the notices were posted by them.    Ridenour also testified that he had never seen anything upon the property that indicated in any way that there ever had been a shaft sunk on the property; that he had found a hole where some one had started prospecting, a little place about a foot deep and about 3x6 feet, but there was no evidence that this hole had been sunk by the defendants or that any discovery of gold had been made therein.    No one appears to have been in possession of the ground when plaintiffs entered upon it, and the inference is that the prospect hole had been abandoned.    Moreover, the plaintiffs did not make a discovery of gold in this ground until they had sunk a shaft to the depth of about 72 feet—62 feet through muck, and 10 to 15 feet through gravel; and the natural inference to be drawn from this fact is that no discovery had been made in the shallow prospect hole which Ridenour saw on the claim, and there was no evidence that there was any other place where prospecting had been done.

The evidence is, therefore, to the effect that plaintiffs made the first discovery of gold upon the ground in controversy; and this is the essential fact in determining the right of possession to mining ground. Priority of discovery gives priority of right against naked location and possession.    Section 2320, Rev. St. (U. S. Comp. St. 1901, p. 1424) ; Lindley on Mines (2d Ed.) § 216; Crossman v. Pendery (C. C.) 8 Fed. 693; Horswell v. Ruiz, 67 Cal. 111, 7 Pac. 197; Garthe v. Hart, 73 Cal. 541, 15 Pac. 93; Gemmell v. Swain, 28 Mont. 331, 72 Pac. 662, 98 Am. St. Rep. 570; Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; Johanson v. White (C. C. A.) 160 Fed. 901.    "Discovery of mineral is the initial fact.   *   *   *   Without that no rights can be acquired. *   *   *   It is undoubtedly true that discovery is the initial fact. The language of the statute makes that plain, and parties may not go on the public domain and acquire the right of possession by the mere performance of the acts prescribed for a location."    Creede & Cripple Creek Mining & Milling Company v. Uinta Tunnel Mining & Transportation Company, 196 U. S. 337, 345, 353, 25 Sup. Ct. 266, 49 L. Ed. 501.    The evidence relating to these proceedings shows that the statute relating to the location of the claim had been followed very closely by the plaintiffs, and the inference to be drawn from the evidence relating to possession and discovery is that the ground located

by them was at the time of the location vacant and unappropriated public land of the United States.

But, in our opinion, there was evidence to support the motion to dismiss the complaint on the ground that plaintiffs' location was not made in the names of bona fide locators, but that the notice contained the names of six dummy locators, in fraud of the United States and in violation of public land laws. E. T. Barnette testified that in March, 1905, before the location was made, he had an understanding with Cook and Ridenour as to the ownership of the claim. They were to stake the claim, make a discovery, and put a hole to bed rock. The witness was to furnish the supplies, tools, and boiler. They were to have each one-eighth interest in the group claim. In April, 1906, this interest was increased to a one-sixth each by a deed from Barnette as attorney in fact for six absent locators. Barnette gave Cook and Ridenour the names of these six absent persons, who it appears were not residents of Alaska, but of the state of Ohio. Four of these were relatives of Barnette—two of them brothers-in-law, one a sister, and one a niece. Barnette wrote to one of these brothers-in-law and obtained powers of attorney from these six persons. The powers of attorney were all dated July 7, 1900, and they all empower Barnette to locate, enter, and take up mining claims in Alaska. He wrote to his brother-in-law that he expected a half interest in the claims located for these absent locators, and when he received the powers of attorney he took it for granted that he was to have a half interest from them. Here were six absent locators, who were to secure the right of possession to 120 acres in the associated claim of 160 acres, and it was understood that a half interest or the equivalent of 60 acres, was to go to Barnette, who was not himself a locator, but was to secure the equivalent of three single locations by this method of securing interests. Barnette also entered into an agreement with McGinn and Sullivan that they should have a one-third interest in the property for looking after the litigation. This one-third interest was the equivalent of 53½ acres of the location. This distribution of interests by Barnette, who appears to have been the moving spirit in securing possession of the ground, was made before the entry and location of the claim, and when, as Barnette testifies, there was an understanding between him and Cook and Ridenour as to the ownership of the claim, and this understanding entered into the act of entry and location, rendering it fraudulent and void as against the United States.

It is true that section 2330 of the Revised Statutes provides that two or more persons or associations of persons having contiguous claims of any size, although such claims may be less than 10 acres each, may make joint entry thereof. This provision is subject to the limitation that no location of a placer claim made after the 9th day of July, 1870, should exceed 160 acres for any one person or association of persons; but the prohibition contained in section 2331 against the location of "more than twenty acres for each individual claimant" is direct and positive, and limits the amount of ground that any one claimant may appropriate, either individually or in association claim, at the time of the location. There is nothing in Smelting Company v.

Kemp, 104 U. S. 636, 651, 26 L. Ed. 875, contrary to this doctrine. What the court there· held was that the locator's interest in a mining grant is salable and transferable, and that it was—

"difficult to perceive what object would be gained, what policy subserved, by a prohibition to embrace in one patent contiguous mining ground taken up by different locations and subsequently purchased and held by one individual. He can hold as many locations as he can purchase, and rely upon his possessory title."

The question here is, not whether an individual can purchase mining claims after they have been located and hold them in his own name, but whether an individual can, by the use of the names of his friends, relatives, or employés as dummies, locate for his own benefit a greater area of mining ground than that allowed by law. If such proceedings were to be recognized as legal, then in this case Barnette was at the time of the location of ·the claim, and ever since has been, the principal locator of 160 acres, and yet he was not himself a locator by notice on the ground or of record, and he is not a party to this action. How can such proceedings receive judicial sanction? This controversy is in a court of equity, where the maxim prevails that "he who comes into equity must come with clean hands."

In Mitchell v. Cline, 84 Cal. 410, 415, 24 Pac. 164, the Supreme Court of California refused to investigate ·and enforce certain agreements with respect to titles to mining claims acquired from the government by patent based upon locations made in the names of dummy locators. The refusal of the court was based upon the fact that the title had been obtained by false and fraudulent representations and in violation of the express provisions of law. The court, referring to section 2331, Revised Statutes of the United States, providing that "no such locations [of placer claims] shall include more than twenty acres to each individual claimant," said:

"The policy and object of this law are to limit the quantity of placer mineral land which may be located by one person to 20 acres, and, although one person may obtain a patent for more than 20 acres, he can do so only by representing to the government that he is a purchaser of the excess from one or more bona fide locators, whose locations were made in conformity with the above statutory limitation as to quantity. For this purpose he is required to present with his application for patent an authenticated abstract of his title, showing its derivation from lawful locations."

In Gird v. California Oil Co. (C. C.) 60 Fed. 531, 545, Judge Ross held that under section 2331, Rev. St., a claim located by three persons must be limited to 20 acres, when it appears that they are in the employ and acting in the interest of a single company.

The mineral land laws of the United States are extremely liberal in the requirements under which possessory rights may ' be acquired. The few restrictions imposed are only intended to prevent the primary location and accumulation of large tracts of land by a few persons, and to encourage the exploration of the mineral resources of the public land by actual bona fide locators. The scheme of using the names of dummy locators in making the location of a mining claim for the purpose of securing a concealed interest in such claim appears to be contrary to the purpose of the statute; but when this scheme is used

to secure an interest in a claim for a single individual, not only concealed but in excess of the limit of 20 acres, it is plainly in violation of the letter of the law, and when, as in this case, all the locators had knowledge of the concealed interest and were parties to the transaction, it renders the location void.

It follows that the court below was right in dismissing the complaint, and for the reasons here stated the judgment of dismissal is affirmed.