F I L E D
United States Court of Appeals
Tenth Circuit

MAY 27 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

———————————————

AMERICAN COLLOID COMPANY,

    Plaintiff - Appellant,

v.

BRUCE BABBITT, Secretary, United
States Department of Interior,

    Defendant - Appellee.

No. 97-8018

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 94-CV-0184-D)

———————————————

R. Dennis Ickes of Parry, Lawrence, & Ward, Salt Lake City, Utah, for Plaintiff-
Appellant.

David A. Kubichek, Assistant United States Attorney (David D. Freudenthal,
United States Attorney for the District of Wyoming, and Nicholas Vassallo,
Assistant United States Attorney, on the brief), Cheyenne, Wyoming, for
Defendant-Appellee.

———————————————

Before **KELLY**, **McKAY**, and **HENRY**, Circuit Judges.

———————————————

**McKAY**, Circuit Judge.

———————————————

In 1990, the U.S. Department of the Interior's Bureau of Land Management [BLM] determined that two mining claims held by Appellant, American Colloid Company [American Colloid], were null and void *ab initio*. The basis for the BLM's decision was the fact that American Colloid's predecessors-in-interest in the claims had failed to file a stipulation regarding the claims which was required by the order of the Secretary of the Interior that opened the lands to mining entry. The statute authorizing the Secretary of the Interior to require the stipulation states that the Secretary may require that the stipulation be filed before the vesting of any rights in a claim on subject lands. See 43 U.S.C.§ 154. American Colloid appealed the BLM's determination to the Department of the Interior Board of Land Appeals [IBLA], and a panel comprised of two administrative law judges affirmed the BLM's decision. See American Colloid Co., 128 I.B.L.A. 257 (1994). American Colloid appealed the IBLA decision to the district court. After briefing and oral argument, the district court affirmed the IBLA panel. See Appellant's App. at 1-13. American Colloid now appeals the district court's decision to this court.

The land encompassing the disputed claims [Bethel Nos. 1 and 2] was withdrawn from entry under the general mining laws for the purpose of serving the nation's reclamation interests. See Appellee's App. at 1-4. In 1954, the Secretary of the Interior opened the land to entry under the general mining laws.

-2-

See Appellant's App. at 25. The Secretary's order opening the land required claimants to file a stipulation reserving a right of way to the United States to utilize the land for any future reclamation needs, in addition to performing the other requirements to perfect a claim. See id. The Secretary published a notice of the opening order in the Federal Register. See id. The notice stated that the stipulation had to be filed before any rights to mining claims on the land vested. See id.

American Colloid's predecessors-in-interest in Bethel Nos. 1 and 2 staked the claims in April 1954, after the land was opened by the Secretary. See id. at 26. American Colloid's predecessors-in-interest never filed the stipulation required by the Secretary's order opening the land to entry. See Appellee's App. at 26. In 1988, the BLM determined that the Bethel Nos. 1 and 2 claims were on lands subject to the Secretary's order requiring the stipulation, and it notified American Colloid that "[their] rights to hold the . . . claims are subject to . . . evidence that the stipulation requirements of the order dated February 26, 1954, were complied with. Absent this evidence, the Bethel Nos. 1 and 2 claims are null and void, ab initio." Id. at 6. In 1989, a rival claimant filed the required stipulation on his own behalf. See id. at 11. In 1990 the BLM declared American Colloid's claims null and void *ab initio*. See id. at 28. It was not until January of 1994 that American Colloid executed and filed the stipulation required by the

opening order.  See Appellant's App. at 26.

American Colloid contends the district court erred in agreeing with the IBLA that 43 U.S.C. § 154 allowed the BLM to void its mining claims.  American Colloid also argues that the IBLA decision cannot be sustained because the "inconsistent opinions" of the IBLA panel violate the Administrative Procedures Act [APA] and the federal regulations governing IBLA decisions.  Appellant's Opening Br. at 9.  It also maintains that the portion of the Secretary's order requiring the stipulation is void because it violates the APA's notice and comment provisions.

When reviewing a district court's decision affirming an agency action, we employ the identical standard of review utilized by the district court.  See Santa Fe Energy Prods. Co. v. McCutcheon, 90 F.3d 409, 413 (10th Cir. 1996).  We do not accord the district court's determination of the case any deference.  See id. We do give deference to the decisions of the Interior Board of Land Appeals, and we will set aside an IBLA decision only if it is arbitrary, capricious, otherwise not in accordance with law, or not supported by substantial evidence.  See 5 U.S.C. § 706; Hoyl v. Babbitt, 129 F.3d 1377, 1382 (10th Cir. 1997).  "The court's function is exhausted where a rational basis is found for the agency action taken." Sabin v. Butz, 515 F.2d 1061, 1067 (10th Cir. 1975).

In reviewing an agency's interpretation of a statute that the agency is

charged with administering, we must determine

> whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole. But if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute, that is, whether the agency's construction is rational and consistent with the statute. However, if a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.
>
> In interpreting statutes, we begin with the relevant language. When the terms of a statute are unambiguous, our inquiry is complete, except in rare and exceptional circumstances.

Aulston v. United States, 915 F.2d 584, 588-89 (10th Cir. 1990) (internal citations and quotations omitted), cert. denied, 500 U.S. 916 (1991).

The statute at issue, 43 U.S.C. § 154, allows for the location of mining claims in areas previously withdrawn from entry under the general mining laws. The statute provides, in pertinent part:

> Where public lands of the United States have been withdrawn for possible use for construction purposes under the Federal reclamation laws, and are known or believed to be valuable for minerals and would, if not so withdrawn, be subject to location and patent under the general mining laws, *the Secretary of the Interior, when in his opinion the rights of the United States will not be prejudiced thereby, may, in his discretion, open the land to location, entry, and patent under the general mining laws, reserving such ways, rights, and easements over or to such lands as may be prescribed by him . . .* and/or *the said Secretary may require the*

*execution of a contract by the intending locator or entryman as a condition precedent to the vesting of any rights in him*, when in the opinion of the Secretary same may be necessary for the protection of the irrigation interests. . . . The Secretary may prescribe the form of *such contract which shall be executed and acknowledged and recorded in the county records and United States local land office by any locator or entryman of such land before any rights in their favor attach thereto . . . .* Notice of such reservation or of the necessity of executing such prescribed contract shall be filed in the Bureau of Land Management and in the appropriate local land office, and notations thereof shall be made upon the appropriate tract books, and any location or entry thereafter made upon or for such lands, and any patent therefor shall be subject to the terms of such contract and/or to such reserved ways, rights, or easements and such entry or patent shall contain a reference thereto.

43 U.S.C. § 154 (emphasis added).

The statute clearly states that the Secretary may require the filing of the stipulation as a condition precedent to the vesting of any rights in the claimant. The Secretary's order opening the land at issue to entry states that, pursuant to the Secretary's authority under section 154, an entryman had to execute and record the stipulation in the county records and the United States Land and Survey Office "before locations [were] made." Appellant's App. at 25. We find no ambiguity inherent in the word "before." American Colloid does not argue that the stipulation was filed prior to the time the claims were declared void. American Colloid finally filed the required stipulation almost forty years after the original entry and location of the claims and almost four years after American Colloid's claims were declared null and void *ab initio* because the required

stipulation was missing. The IBLA decision that American Colloid possessed no rights to Bethel Nos. 1 and 2 because the stipulation was not filed is logical given the unambiguous intent of Congress to grant the Secretary the power to require the stipulation prior to the vesting of any rights. The language of this statute required no interpretation by the BLM or the IBLA. We see no error in the conclusion that Congress' intent in enacting section 154 was followed by the BLM in declaring the claims to Bethel Nos. 1 and 2 null and void.

American Colloid asserts that the district court erred in affirming the IBLA decision because the concurring opinion of one of the panel members reveals a disagreement between the judges on a material issue of law. American Colloid argues that because there is a disagreement on a material issue of law, the IBLA opinion does not represent the opinion of a majority of judges who agreed upon a "permissible construction" of 43 U.S.C. § 154. Appellant's Opening Br. at 9. American Colloid contends that the "inconsistent opinions" violate section 706(2)(D) and section 557(c) of the APA, and 43 C.F.R. § 4.2, a regulation governing the decisions of the IBLA. Id. at 9-10.

Section 706 of the APA requires a reviewing court to hold unlawful agency actions which do not follow the "procedure required by law." 5 U.S.C. § 706(2)(D). American Colloid contends that the agency decision is not in accordance with the law because the proper procedure for issuance of a valid

IBLA decision has not been followed, stating:

> The lower court was required to determine whether the ALJs had agreed upon a clear and unambiguous intent by Congress concerning the necessity of the stipulation . . . *being executed and recorded prior to locating the mining claims* and *whether the recording was an essential component to the vesting of possessory rights in the locator.* By issuing two inconsistent opinions *concerning the sequence and timing of the recording* of the stipulation, the ALJs expressed disagreement as to the intent of Congress concerning these salient points.

Appellant's Opening Br. at 9 (emphasis added).  American Colloid contends that the IBLA judges did not reach a majority decision, as required by 43 C.F.R. § 4.2(a).  See id. at 10.  It maintains that the issue of exactly when the stipulation must be filed was a material issue of law before the panel and that the two opinions leave this issue unresolved.  See id. at 9.

A brief explanation of mining law terminology is useful to explaining our conclusion that the IBLA judges' opinions are not contradictory.  Before one may obtain any rights in a mining claim, one must "locate" a valuable deposit of a mineral.  See 30 U.S.C. §§ 26, 28; Cole v. Ralph, 252 U.S. 286, 295-96 (1920).  The term "location," when used in the general mining laws, involves more than one act.  To perfect a location, one must comply with applicable state and federal laws, including physically staking the metes and bounds of the claim on the ground (monumenting the claim) and filing a notice of the claim pursuant to state and federal law (recording the claim's geographical location and the person

staking the claim).  See 30 U.S.C. §§ 26, 28; Cole, 252 U.S. at 295-96; Creede & Cripple Creek Mining & Milling Co. v. Uinta Tunnel Mining & Transp. Co., 196 U.S. 337, 345-47 (1905); United States v. Zweifel, 508 F.2d 1150, 1153-54 (10th Cir.), cert. denied, 423 U.S. 829 (1975); Dredge Corp. v. Conn, 733 F.2d 704, 705-06 (9th Cir. 1984).  A location cannot be made without a discovery of a valuable mineral deposit.  See Cole, 252 U.S. at 296; Zweifel, 508 F.2d at 1154. Until one has completed all of the acts required by state and federal law, no rights in the mining claim vest in the locator.  See Cole, 252 U.S. at 296; Creede & Cripple Creek Mining & Milling Co., 196 U.S. at 345-47; Del Monte Mining & Milling Co. v. Last Chance Mining & Milling Co., 171 U.S. 55, 67 (1898); Zweifel, 508 F.2d at 1153.

American Colloid's argument that the IBLA panel did not reach a conclusory decision on a material issue of law in this case misconstrues what was required of the IBLA panel.  The precise issue before the panel was whether the BLM could require that the stipulation be filed prior to the rights to any claim vesting.  Both judges concluded that the BLM could require the stipulation as a condition precedent to the vesting of any rights.

In describing when the stipulation must be filed, Judge Irwin's majority decision states:  "When BLM publishes an order opening the lands, as in this case, presumably [the filing of the stipulation] would be done by preparing the

agreement with a description of the land to be located, signing it, recording it with the county recorder and filing it with BLM before locating the claim." American Colloid Co., 128 I.B.L.A. at 261. Judge Mullen's concurring opinion attempts to "avoid an interpretation of [the] decision that could lead to further appeals to this Board and litigation between rival claimants." Id. at 263. Judge Mullen notes that multiple acts are required to perfect the location of a mining claim. See id. The judge then states:

> It is also well established that there is no essential order in which the several acts required by law [to perfect a location] must be performed. . . . Congress clearly intended to make the execution of a contract an act that must be completed before the right of exclusive possession of the mineral estate is vested in the locator. However, by making the execution and recordation of a contract necessary steps for vesting of rights, pursuant to the Act of April 23, 1932, Congress did not make the execution and recordation of a contract a prerequisite to undertaking any of the other acts necessary for the location of a mining claim. To hold otherwise would cause a location to be null and void ab initio if the claimant did any of the other steps necessary to locate a mining claim prior to execution of the contract. This is the interpretation I wish to dispel.

Id. at 264.

Judge Irwin's statement that "presumably" the requirement of the stipulation would be fulfilled by filing the stipulation prior to the other acts of location, i.e., "before locating the claim," does not require that the stipulation be filed prior to monumenting or any other act necessary to perfect a location. Id. at 261. Judge Mullen's opinion does not state that a right cannot vest if the

stipulation is filed prior to the other acts of location.  Therefore, the judges'

opinions do not state conflicting requirements for when the stipulation must be

filed, as American Colloid contends.  Both judges concluded that American

Colloid's claims were null and void because the statute is clear that the Secretary

could require that the stipulation be filed before any right to Bethel Nos. 1 and 2

could vest and that the Secretary did exercise his discretion to require the

stipulation.  See id. at 261, 263-64.

The fact that one judge wrote separately to clarify part of the opinion does

not invalidate the decision.  Cf. 43 C.F.R. § 4.2(a) ("The concurrence of a

majority of the Board Administrative Judges who consider an appeal shall be

sufficient for a decision."); Bowman Transp. Inc. v. Arkansas-Best Freight Sys.,

Inc., 419 U.S. 281, 286 (1974) ("[W]e will uphold a decision of less than ideal

clarity if the agency's path may reasonably be discerned."); Morris v. Commodity

Futures Trading Comm'n, 980 F.2d 1289, 1293-94 (9th Cir. 1992) (Where only

four of five commissioners participated in a decision and one of the three

commissioners in the majority concurred only in the result, the fact that only two

members of the five-person panel articulated an agreed-upon rationale for the

decision did not violate section 557(c) of the APA.).  Additionally, a reviewing

court should give weight to an agency decision which is consistent with earlier

pronouncements on the subject under review.  See Aulston, 915 F.2d at 596;

Webb v. Hodel, 878 F.2d 1252, 1255 (10th Cir. 1989) ("We are obligated to regard as controlling a reasonable, consistently applied interpretation of the government."). The IBLA decision at issue follows established precedent; several prior IBLA panels have held that 43 U.S.C. § 154 authorized the Secretary of the Interior to require a stipulation as a condition precedent for the vesting of any interest in a mining claim. See Thomas L. Lee, 98 I.B.L.A. 149, 151 (1987); Red Mountain Mining Co., 85 I.B.L.A. 23, 26 (1985); Frank Zappia, 10 I.B.L.A. 178, 183-84 (1973).

American Colloid contends that even though they did not file the stipulation prior to 1994, any failure to file the stipulation was a defect which they were entitled to "cure." See Appellant's Opening Br. at 25-28. The district court held that American Colloid could not cure a defective mining claim if the claim was void *ab initio*. See Appellant's App. at 12. American Colloid's response to this holding is that the district court's decision is erroneous because the claims were not void *ab initio*. See Appellant's Opening Br. at 25-26. In affirming the holding that the claims were void *ab initio*, we also affirm the district court's decision that the failure to file the stipulation was a condition precedent to any right vesting. American Colloid was not entitled to cure the defect because they had no location or any other right susceptible to the cure doctrine.

> Proper disposition of the appeal before us requires that a distinction be made between a voidable mining claim and one which is null and void ab initio. A claim in the latter category is incapable of giving rise to any rights or obligations. An unperfected or voidable claim, on the other hand, is one as to which a claimant may lose his rights if he fails to do all the law states to be necessary to have a valid mining claim.
>
> * * *
>
> The decision [to void the claims] was correct, however, with respect to those claims . . . subject to the 1939 Opening Order requiring the filing of stipulations at the time of the subsequent withdrawal from mining. Claims located on these lands were properly declared null and void ab initio in the absence of evidence of the filing of the stipulation.

Fred G. Welker, 99 I.B.L.A. 297, 299 (1987) (internal citations omitted).

American Colloid also raises the defense of laches to the BLM's decision. This argument fails because the Supreme Court has held that the doctrine of laches does not apply to claims concerning the public lands. See United States v. California, 332 U.S. 19, 40, amended by 332 U.S. 804 (1947). This circuit has applied the Supreme Court's holding in United States v. California, absent allegations of agency misconduct. See Double J. Land & Cattle Co. v. United States Dep't of the Interior, 91 F.3d 1378, 1381-82 (10th Cir. 1996). American Colloid also alleges that any requirement by the Secretary to record the stipulation prior to the vesting of a right exceeded the Secretary's statutory authority. We hold that the Secretary did not exceed his statutory authority in requiring the stipulation; section 154 explicitly gives the Secretary the authority to require the

-13-

stipulation at his discretion.

American Colloid contends that the stipulation requirement in the opening order cannot support the voiding of their claims because the order does not comply with 5 U.S.C. § 553, one of the rule-making provisions of the APA. See Appellant's Opening Br. at 28. The rule-making requirements of section 553 do not apply to matters concerning the public lands; therefore, this argument was properly rejected by the district court. See 5 U.S.C. § 553(a)(2); NLRB v. Wyman-Gordon Co., 394 U.S. 759, 776 n.1 (1969) (Douglas, J., dissenting) (noting that the public property exception of section 553(a)(2) excludes, among others, the BLM and other agencies dealing with public property); Hunter v. Morton, 529 F.2d 645, 649 (10th Cir. 1976); Story v. Marsh, 732 F.2d 1375, 1384 (8th Cir. 1984); Wilderness Pub. Rights Fund v. Kleppe, 608 F.2d 1250, 1253 (9th Cir. 1979), cert. denied, 446 U.S. 982 (1980); cf. Duesing v. Udall, 350 F.2d 748, 752 n.4 (D.C. Cir. 1965) (noting that Department of the Interior regulations pertaining to the issuance of oil and gas leases on wildlife refuge lands were related to public property within the meaning of the predecessor statute to section 553(a)(2)), cert. denied, 383 U.S. 912 (1966); McNeil v. Seaton, 281 F.2d 931, 936 (D.C. Cir. 1960) (regulations pertaining to grazing privileges on federal ranges promulgated under the Taylor Grazing Act held to fall within the public property exemption of the predecessor statute to section 553(a)(2)).

We hold that the IBLA decision finding American Colloid's claims to Bethel Nos. 1 and 2 null and void *ab initio* was not arbitrary and capricious. The IBLA decision was reached by a process in accordance with the law. Therefore, the decision of the district court is AFFIRMED.