**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

JERRY GOETZ, d/b/a/ JERRY
GOETZ AND SONS,

    Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE; DAN GLICKMAN,
Individually and as the Secretary of the
United States Department of
Agriculture; and, THE ACTING
ADMINISTRATOR OF THE
AGRICULTURAL MARKETING
SERVICE, UNITED STATES
DEPARTMENT OF AGRICULTURE,

    Defendants-Appellees.

No. 00-3173

(D. Kansas)

(D.C. No. 98-CV-1155-JTM)

_____

**ORDER AND JUDGMENT** *

_____

Before **KELLY** and **McKAY**, Circuit Judges, and **BRIMMER**, District Judge. **

_____

Plaintiff-Appellant Jerry Goetz ("Goetz") appeals the district court's May

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    ** The Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation.

23, 2000 Order affirming the Secretary of Agriculture's order to pay assessments, late charges and civil penalties under the Beef Promotion and Research Act ("BPA"), 7 U.S.C. § 2901 *et seq.* Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## Background

In 1986, Congress passed the BPA to establish a procedure for financing a beef promotion and research program. The BPA authorized the Secretary of Agriculture ("Secretary") to issue a beef promotion and research order requiring that "each person making payment to a producer for cattle purchased from the producer shall . . . collect an assessment and remit the assessment to the [Cattlemen's Beef Promotion and Research] Board." 7 U.S.C. § 2904(8).

The Secretary thereafter issued the Beef Promotion and Research Order ("Order"), 7 C.F.R. § 1260.101 *et seq*. providing for an assessment of $1.00 per head of cattle sold. 7 C.F.R. § 1260.172(a). The assessment shall be collected by a "collecting person" meaning "the person making payment to a producer for cattle, or any other person who is responsible for collecting and remitting an assessment pursuant to the Act." 7 C.F.R. § 1260.106.

In 1987, the Kansas Beef Council sent a letter to Goetz containing the following paragraph:

> The Kansas Beef Council has been informed by producers selling cattle to you that you have collected from them a $1.00 per head

assessment on cattle sold to you. The Kansas Beef Council has not received remittance of those dollars from you.

Aplt. App. at 998. The letter also informed Goetz that he was required to remit a $1.00 assessment on all cattle purchased from a producer and that his failure to do so might result in a civil penalty. A similar letter was sent in February and June 1992. Despite these warnings, Goetz never submitted any assessments from 1986 until October 29, 1993 when the Acting Administrator of the Agricultural Marketing Service filed a Complaint against Goetz.

The Complaint alleged willful violations of the BPA by Goetz. On September 25 and 26, 1996, a hearing was held before an Administrative Law Judge ("ALJ"). On February 26, 1997, the ALJ issued a Decision and Order finding Goetz liable for violating the BPA and ordering Goetz to pay past due assessments, late payment charges, and a civil penalty. On April 7, 1997, Goetz appealed the ALJ's decision to the Judicial Officer to whom the Secretary had delegated authority to act as a final deciding officer. On November 3, 1997, the Judicial Officer issued a Decision and Order modifying the ALJ's order.

Both parties filed motions for reconsideration of the Judicial Officer's order and on April 3, 1998, the Judicial Officer filed an order on the motions for reconsideration. The Judicial Officer's final order (1) ordered Goetz to cease and desist from violating the BPA; (2) assessed a civil penalty of $69,804.49; and (3) required payment of past due assessments and late payment charges of

−3−

$66,913.00. Goetz appealed the Judicial Officer's order to the United States District Court for the District of Kansas. The district court affirmed the Judicial Officer's order in all respects.

Goetz now appeals to this Court and raises the following issues: (1) Did the district court err in affirming the Judicial Officer's decision that Goetz is liable for past due assessments, late payment charges, and civil penalties in the amount of $71,788.89 for the period of October 1, 1986 through December 31, 1989; (2) Did the district court err in affirming the Judicial Officer's decision that the Collection - Compliance Reference Guide did not establish a three year statute of limitations under the BPA; (3) Did the district court err in affirming the Judicial Officer's decision that Goetz is liable for past due assessments, late payment charges, and civil penalties on cattle which Goetz sold at sale barns; (4) Did the district court err in affirming the Judicial Officer's decision that Goetz is liable for past due assessments, late payment charges, and civil penalties on the cattle purchases listed on page 1032 of Appellant's Appendix in which Goetz had signed a non-producer status form; (5) Did the district court err in affirming the Judicial Officer's decision that Goetz is liable for past due assessments, late payment charges, and civil penalties on private treaty sales; and (6) Did the district court err in affirming the Judicial Officer's assessment of civil penalties.

## Discussion

-4-

"When reviewing a district court's decision affirming an agency action, we employ the identical standard of review utilized by the district court." *American Colloid Co. v. Babbitt*, 145 F.3d 1152, 1154 (10th Cir. 1998) (citation omitted). While the district court's decision is not given any deference, we do give deference to the agency's decision. *Id.* The agency's decision will be set aside "only if it is arbitrary, capricious, otherwise not in accordance with law, or not supported by substantial evidence." *Id.* (citing 5 U.S.C. § 706). "The court's function is exhausted where a rational basis is found for the agency action taken." *Sabin v. Butz*, 515 F.2d 1061, 1067 (10th Cir. 1975).

## A. Violations Arising Between October 1986 and December 1989

Goetz first challenges the Judicial Officer's determination of liability for past due assessments, late payment charges, and civil penalties for the period of October 1, 1986 through December 31, 1989. The amount of assessments, late payment charges, and civil penalties levied during this period were based on an auditor's estimates of the number of cattle Goetz had purchased during that period. The auditor estimated "these numbers based upon the average numbers for the period January 1, 1999 through June 30, 1994." Aplt. App. at 1005.

Goetz claims a regular business practice of keeping records for only three years. As a result, Goetz claims there is no relevant evidence which shows to what extent, if any, Goetz may be liable for unpaid assessments under the BPA

prior to January 1, 1990. He contends that the auditor's estimation is only a speculative inference and is therefore not "substantial evidence" which could support the agency's determination. *See* 5 U.S.C. § 706(2)(E).

Goetz's arguments fail to take into account the other evidence considered by the Judicial Officer. In particular, the Kansas Beef Council notified Goetz in a June 1, 1987 letter of his failure to remit the $1.00 assessments that he had collected from various producers. A similar letter was sent again in February 1992. In addition, the auditor testified that he arrived at his estimates after comparing Goetz's tax returns for the 1986 to 1989 period with those from 1991 to 1994. The auditor found that "[b]ased upon income tax records, there was no significant difference in [Goetz's] operations for these periods." Aplt. App. at 1005.

We find substantial evidence to support the Judicial Officer's determination of Goetz's liability for past due assessments, late payment charges, and civil penalties for the period of October 1, 1986 through December 31, 1989. The June 1987 and February 1992 letters provide substantial evidence of Goetz's failure to remit the $1.00 assessments. Further, in light of the auditor's review of Goetz's tax records and upon his finding that there was no significant difference in Goetz's operations during the years of 1986 through 1994, the auditor's estimation is more than a speculative inference.

We also find that the Judicial Officer's reliance upon the auditor's estimation was not arbitrary or capricious. *See Michigan Dept. of Educ. v. United States Dept. of Educ.,* 875 F.2d 1196, 1205-06 (6th Cir. 1989) (concluding that agency's use of a statistical sample as a basis for its findings of fact was not arbitrary or capricious). "[M]athematical and statistical methods are well recognized as reliable and acceptable evidence in determining adjudicative facts." *Id.*

Goetz also contends that allowing this estimation to shift the burden to Goetz violates his right to Due Process under the Fifth Amendment. Goetz offers only the following to support this proposition: "[d]ue process is ordinarily absent if a party is deprived of his or her property or liberty without evidence having been offered against him or her in accordance with established rules." 16B A M. JUR. 2D *Constitutional Law* § 960 (1998). However, the Court has already found substantial evidence to support the Judicial Officer's determination. Further, Goetz has failed to establish that reliance upon such evidence violated any established rules. Therefore, this Court finds no violation of due process.

**B.    Collection - Compliance Reference Guide**

Goetz next contends that the district court erred in affirming the Judicial Officer's decision that the Collection - Compliance Reference Guide ("Guide") did not establish a three year statute of limitations. The Guide requires that a

collecting person "maintain records and documentation pertaining to the [assessment] for at least three years following each transaction." Aplt. App. at 1129. Goetz argues that this provision should be deemed to establish a three year statute of limitations.

"An action on behalf of the United States in its governmental capacity is subject to no time limitation, in the absence of congressional enactment clearly imposing it." *United States v. Telluride Co.*, 146 F.3d 1241, 1244 (10th Cir. 1998) (citation omitted). Goetz does not direct the Court to any congressional enactment which establishes a statute of limitations on collection of assessments under the BPA. Goetz only points to the above provision of the Guide. However, as the Judicial Officer and the district court noted, the Guide is not a regulation which is binding upon the Secretary, collecting persons, or producers. Instead, it is merely a reference designed to assist the state beef councils in their collection procedures. The Court concludes there is no "congressional enactment clearly imposing" a statute of limitations concerning collection of assessments under the BPA. *See id.* Therefore, we find no error in the Judicial Officer's determination that the Guide does not establish a statute of limitations.

Goetz also argues that allowing enforcement proceedings to extend beyond three years violates his equal protection rights under the Fifth Amendment. Goetz claims he is being punished for not keeping records longer than the Guide

-8-

required and therefore more is required of him than of other producers. In order to show an equal protection violation, Goetz would first have to show that he was treated differently than other "similarly situated persons." *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir. 1999). However, Goetz offers no evidence that he was treated differently than anyone else. Therefore, we must reject Goetz's equal protection claim.

## C. Sale Barns

Goetz next claims the district court erred in affirming the Judicial Officer's decision that Goetz is liable for past due assessments, late payment charges, and civil penalties on cattle which Goetz sold at sale barns. While Goetz's characterization of the issue is limited to cattle *sold* at sale barns, he first argues that he is never required to collect assessments on cattle which he *buys* at sale barns. Goetz then contends that his cattle "swapping" operations, resulting in the *sale* of cattle at sale barns, qualify for an exemption from the BPA. The first argument addresses Goetz's liability for collecting assessments under the BPA as a collecting person. The second argument, however, asserts an exception under the BPA which relieves a seller from having to pay an assessment to the collecting person. We will address the issue of cattle purchased at sale barns before addressing the cattle swapping operations.

### 1. Cattle purchased at sale barns

Goetz argues that whenever he purchases cattle from a sale barn, he is never the collecting person, as the sale barn is always the designated collecting person. Goetz's only support for this assertion is a portion of the Guide providing that sale barns "can be collecting persons." Aplt. App. at 1127. As stated above, the Guide is not part of the regulations, and it is not binding on the Secretary, collecting persons, or producers. However, even if the Guide were held to create a binding rule, the language quoted cannot fairly be construed to mean that sale barns are always the collecting persons. The language itself only provides that a sale barn *can* be a collecting person. In addition, as discussed below, the Judicial Officer found at least one occasion where Goetz certified that he was collecting the assessment despite the fact that he was purchasing cattle at a sale barn. Therefore, we find no error in the Judicial Officer's failure to deem all purchases from sale barns as exempt from collection responsibilities.

### 2.    Cattle sold at sale barns

Goetz also contends that his cattle swapping operations relieve him from producer status under the BPA and therefore he does not owe any assessment under the BPA upon the sale of such cattle. An assessment will not be levied on cattle owned by a person who:

> (i) Certifies that the person acquired ownership of cattle to facilitate the transfer of ownership of such cattle from the seller to a third party, (ii) Establishes that such cattle were resold not later than 10 days from the date on which the person acquired ownership; and (iii)

> Certifies that the assessment levied upon the person from whom the person purchased the cattle, if an assessment was due, has been collected and has been remitted, or will be remitted in a timely fashion.

7 C.F.R. § 1260.314(a)(2). Here, Goetz claims his cattle swapping operations always qualify for this exemption. He refers to evidence in the record suggesting that such cattle are never brought to his feed lots, but are immediately transferred to another sale barn. In support of his claim, he contends that holding the cattle for a longer period of time would be far too costly.

Even assuming Goetz's claims regarding his cattle swapping operations as true, we would still not be persuaded by his arguments. The regulation is clear that three requirements must be met before one achieves the exemption of 7 C.F.R. § 1260.314(a)(2). Goetz's claim that the mere resale within ten days achieves the exemption is simply not supported by the plain language of the regulation. Therefore, the Court declines to write a wholesale exemption from assessment for those sale barn transactions involving Goetz's swapping business.

**D.      Non-Producer Status Forms**

Goetz also contends the district court erred in affirming the Judicial Officer's decision that Goetz is liable for past due assessments, late payment charges, and civil penalties on certain cattle purchases where Goetz signed a

Certification of Non-Producer Status form. [1] In this case, the auditor obtained

from the Kansas Beef Council several non-producer status forms signed by Goetz

and submitted to various sale barns. On these forms, Goetz certified that he had

collected $1.00 per head. Goetz claims that this was the sole basis for the

Judicial Officer's determination of liability for these purchases.

Goetz challenges the Judicial Officer's findings on several grounds. First,

he offers his own testimony that he did not collect the $1.00 assessment and that

the forms had been erroneously completed by someone at the sale barn to show

that an assessment had been collected. However, the ALJ and the Judicial Officer

both rejected Goetz's argument denying collection of the $1.00 assessment and

asserting the forms had been erroneously completed. The ALJ's decision was

based on a credibility finding. The ALJ was in a far better position than this

Court to judge the credibility of Goetz on this point. Therefore, it is proper to

defer to the ALJ's judgment of credibility on this issue. *See Webco Indus., Inc. v.*

*NLRB*, 217 F.3d 1306, 1311 (10th Cir. 2000) ("The ALJ's credibility resolutions

deserve great weight to the extent they are based on testimonial evidence of live

witnesses and the hearing judge has had the opportunity to observe their

demeanor." (citation and quotation omitted)).

Goetz also contends that the auditor admitted that all of the cattle referred

---

[1] These forms allow a buyer to obtain the 7 C.F.R. § 1260.314 exemption referred to above.

to in this section were resold within ten days of Goetz's purchase and should therefore be exempt from the BPA assessments. Goetz's arguments fail to address the issue at hand. The issue is not whether Goetz failed to pay assessments on the cattle he sold, but whether he failed to *remit* assessments collected on cattle he had purchased. Reselling cattle within ten days does not obviate the need to collect or remit assessments on cattle purchased from a producer. *See* 7 C.F.R. § 1260.314(a)(2)(iii). Rather, the non-producer exemption of 7 C.F.R. § 1260.314(a)(2) only means that Goetz would not be required to pay a collecting person an assessment upon Goetz's subsequent resale of the cattle. 7 C.F.R. § 1260.314(a). Here, the Judicial Officer, found that Goetz had collected the assessment on cattle he purchased, and that he failed to remit it to the proper beef council. The Judicial Officer found Goetz liable for these collections despite the fact that Goetz had resold the cattle within ten days. We find that the Judicial Officer's ruling was based upon a correct view of the regulation and Goetz's argument on this point is unpersuasive.

Next, Goetz argues that the cattle referred to in this section were part of his cattle swapping operations and he reargues the points asserted in the previous section. The Court has already fully addressed Goetz's arguments on this issue. For the reasons stated above, we reject this argument.

Finally, Goetz contends the purchase invoices for the cattle at issue do not

-13-

indicate any deduction was withheld for the assessments. However, this evidence is not sufficient for this Court to alter the Judicial Officer's findings on this issue. It is not our duty to reweigh the evidence, our review is limited to determining whether substantial evidence exists to support the Judicial Officer's decision. *N. Coal Co. v. Dir., Office of Workers' Comp. Programs*, 100 F.3d 871, 873 (10th Cir. 1996). We hold that the certification of non-producer status provides substantial evidence to support the Judicial Officer's conclusion that Goetz had collected, but failed to remit, the assessments.

**E.      Private Treaty Sales**

Private treaty sales are defined by the Guide as a sale between producers. Aplt. App. at 1133. Goetz argues there is never a designated collecting person in a private treaty sale and therefore he cannot be held liable for unpaid assessments from such a sale until the Secretary proves that the seller failed to remit the proper assessments for these transactions.

The regulations provide for the collection of assessments as follows:

(a) A $1.00 per head assessment on cattle sold shall be paid by the producer of the cattle in the manner designated in § 1260.311.
. . . .
(c) Failure of the collecting person to collect the assessment on each head of cattle sold as designated in § 1260.311 shall not relieve the producer of his obligation to pay the assessment to the appropriate qualified State beef council or the Cattlemen's Board as required in § 1260.312.

7 C.F.R. § 1260.310. According to the Guide, "[f]or private treaty sales, either

the buyer or the seller may be the collecting person." Aplt. App. at 1129.

However, "both are responsible for ensuring that the [assessment] is collected and

remitted. *Id.*

The Judicial Officer, as well as the ALJ, found that Goetz was the

designated collecting person under the regulations in the private treaty sales

which were at issue. "'Collecting person' means the person making payment to a

producer for cattle, or any other person who is responsible for collecting and

remitting an assessment pursuant to the Act, the order and regulations prescribed

by the Board and approved by the Secretary." 7 C.F.R. § 1260.106. Upon

reviewing the agency's determination on this issue, the Court is reminded that

> [W]e must give substantial deference to [the agency's] interpretation
> of its own regulations. Our task is not to decide which among
> several competing interpretations best serves the regulatory purpose.
> Rather, the agency's interpretation must be given controlling weight
> unless it is plainly erroneous or inconsistent with the regulation.

*Rocky Mountain Radar, Inc. v. F.C.C.*, 158 F.3d 1118, 1123 (10th Cir. 1998)

(citation omitted).

Under the BPA, the buyer is generally regarded as the collecting person.

*See* 7 C.F.R. § 1260.172(a) ("Except as prescribed by regulations approved by the

Secretary, each person making payment to a producer for cattle purchased from

such producer shall be a collecting person"); 7 C.F.R. § 1260.311 ("Collecting

persons for purposes of collecting and remitting the $1.00 per head assessment

shall be . . . each person making payment to a producer for cattle purchased"). The provisions of the Guide providing that the buyer or the seller can be a collecting person do not change the general provisions found in the regulations. The fact that either may be a collecting person does not affect the notion that buyers are generally regarded as the collecting person.

Nor does the Guide's statement that both the buyer and seller are responsible for the collection and remission of assessments alter the general assumption. The regulations provide that the collecting persons failure to remit the assessments does not alter the liability of the producer for paying the assessment. *See* 7 C.F.R. § 1260.310. Therefore, the Guide's provision that both the buyer and seller in private treaty sales are responsible for the unpaid checkoffs until they are remitted does not alter the regulations as Goetz suggests.

Goetz, as the person making payment for the cattle, is reasonably considered to be a collecting person. *See* 7 C.F.R. § 1260.172(a). In light of the deference we must give to the agency's interpretation of its regulations, we find that the Judicial Officer's finding that Goetz was the collecting person in these private treaty sales was not plainly erroneous or inconsistent with the regulations. *See Rocky Mountain Radar*, 158 F.3d at 1123.

**F.    Civil Penalties**

Finally, Goetz challenges the assessment of penalties in the amount of

$69,804.49.  The statute provides:  "If the Secretary believes that the administration and enforcement of this chapter or an order would be adequately served by such procedure, following an opportunity for an administrative hearing on the record, the Secretary may . . . (2) assess a civil penalty of not more than $5,000 for violation of such order."  7 U.S.C. § 2908(a)(2).  Goetz argues that this allows only one $5,000 penalty after any administrative hearing.  The Judicial Officer and the District Court held that this allowed a $5,000 penalty for each violation of the statute.

Our analysis of this situation is guided by the following:

> In interpreting a statute, the starting point is the statutory language. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.  In other words, unless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control.

*Long v. Bd. of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1157 (10th Cir. 1997).

We find that the statutory penalty provision is not ambiguous.  Goetz correctly perceives that a penalty may be assessed only after an administrative hearing.  However, the statute does not say that only one $5,000 fine is allowed per hearing.  On the contrary, it allows a penalty of not more than $5,000 for violation of an order.

Neither do we believe this interpretation would lead to absurd results.

Allowing a $5,000 fine for each violation of the order helps to ensure that purposes of the BPA are attained, namely organizing "an orderly procedure for financing . . . a coordinated program of promotion and research." 7 U.S.C. § 2901(b). Goetz's interpretation (allowing only one $5,000 fine after any administrative hearing) would have little effect in deterring prospective violators of the BPA who, like Goetz buy and sell up to 200 cattle per day.

In this case, Goetz was found in be in violation of the BPA order on several different occasions. Therefore, the Secretary's assessment of $69,804.49 in penalties for Goetz's multiple violations of the BPA complies with the plain language of the statute.

## Conclusion

In sum, we hold that the judgment of the Judicial Officer should not be set aside. Therefore, the district court's Memorandum and Order is **AFFIRMED.**

Entered for the Court

Clarence A. Brimmer
District Judge